# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TROY DEWAYNE REDD,<br><br>Petitioner,<br><br>vs.<br><br>JIM McKINNEY,<br><br>Respondent. | No. C08-3064-MWB<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254** |

Troy Dewayne Redd was charged in Black Hawk County, Iowa, District Court with burglary in the first degree, robbery in the first degree, terrorism, pimping, assault with intent to commit serious injury, and false imprisonment. The charges arose from two incidents that took place in Waterloo, Iowa, on the evening of March 21, 1998. The first incident occurred on Arlington Street (the "Arlington Street" incident), and resulted in the terrorism, pimping, assault with intent to commit serious injury, and false imprisonment charges. The second incident occurred later that evening on Lincoln Street (the "Lincoln Street" incident), and resulted in the burglary and robbery charges.

The trial judge severed the Arlington Street charges from the Lincoln Street charges, and tried the Lincoln Street charges first. After a jury trial, Redd was convicted of burglary and robbery. The Arlington Street charges were tried later, and Redd was convicted of terrorism and assault. He appealed only from his conviction on the Lincoln Street charges. His appeal was referred to the Iowa Court of Appeals, which affirmed his conviction. *See State v. Redd*, 2000 WL 1724523 (Iowa Ct. App. Nov. 20, 2000) ("*Redd I*"). His application for further review by the Iowa Supreme Court was denied.

Redd filed an application for post-conviction relief ("PCR") in Black Hawk County District Court. After a bench trial, the application was denied. Redd appealed, and his appeal again was referred to the Iowa Court of Appeals, which affirmed the denial of his application. *See Redd v. State*, 755 N.W.2d 144 (table), 2008 WL 2520850 (Iowa Ct.

App. June 25, 2008) ("*Redd II*"). The Iowa Supreme Court denied his application for further review.

The factual background of the case was summarized by the Iowa Court of Appeals in its opinion on Redd's direct appeal, and again in its opinion on Redd's PCR appeal. In a habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," absent rebuttal by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because Redd has not rebutted the factual findings made by the Iowa Court of Appeals, this court adopts them for purposes of this order. The Iowa Court of Appeals summarized the facts of the case as follows:

> On the evening of March 21, 1998, Redd and Carmel Dolan went to a bar called Pat's Tap. While at the bar, Dolan observed Redd talking to and playing pool with another man. Later in the evening, Dolan and Redd returned to Dolan's apartment on Arlington Street in Waterloo. Redd became angry with Dolan's neighbor, Bill Pierce, because Pierce spent several hours that day with Dolan in her apartment. Redd told Dolan he was going to call his "brother-in-law." She overheard Redd tell the person on the phone to "bring the gun because he was going to kill Bill." Approximately fifteen minutes later, the same man Dolan saw with Redd in Pat's Tap arrived at her apartment with a shotgun. Redd and the other man went up to Pierce's apartment. Several shots were fired through Pierce's front door. Pierce was inside his apartment at the time. Redd and the other man then fled the scene.
>
> Later the same evening, Redd and Cletus Johnson were together at the Jet Lounge in Waterloo, Iowa. Two women, Larsie Epps and Rebecca Worth, joined them at the bar, and after several minutes the four returned to Epps's apartment on Lincoln Street in Waterloo. Worth and her boyfriend, Shawn Nosko, lived across the hallway from Epps in another apartment. Nosko was sleeping in his apartment when Johnson, Redd, Epps, and Worth returned to the building. At some point, Nosko entered the hallway and overheard Worth make a comment to Redd and Johnson that he interpreted to be sexual in nature and made him jealous. Nosko said "Fuck

> you, bitch" to Worth and returned to his apartment. Johnson and Redd then entered Nosko's apartment, assaulted both Nosko and Worth, and robbed Nosko at gunpoint. Redd and Johnson were arrested later; however, the gun was never recovered.
>
> The district court severed the burglary and robbery charges (Lincoln Street incident) from the other charges (Arlington Street incident). Redd filed a motion in limine seeking to exclude all evidence of the Arlington Street incident at the trial concerning the Lincoln Street incident. The district court's ruling excluded some of the evidence, including "the shooting through a door. . . ." Nonetheless, the State offered the testimony of three witnesses – Officer Richard Gehrke, Pierce, and Dolan – who testified bullet holes were found in Pierce's door or were shot through his door. Redd was found guilty of and sentenced for these two charges. He was later found guilty of and sentenced for terrorism and assault.

*Redd II*, 2008 WL 2520850 at *1.

On December 31, 2008, Redd filed in this court a *pro se* application for habeas corpus relief pursuant to 28 U.S.C. § 2254. Doc. No. 4. The court granted his request for appointment of counsel, and attorney Jay E. Denne was appointed to represent him. Doc. No. 3. On February 3, 2009, the respondent ("the State") filed a motion for partial summary judgment. Doc. No. 14. As a result of the court's ruling on the motion, Doc. No. 28, only one issue remains in the case;, i.e., were trial counsel and appellate counsel ineffective in failing to properly object to the admission of evidence relating to the Arlington Street incident at the Lincoln Street trial?

Before the Lincoln Street trial, the attorney for Redd's co-defendant filed a motion in limine seeking to exclude evidence pertaining to the Arlington Street incident. At the hearing on the motion, Redd's counsel joined in the motion, stating, "[W]e would join in the attempt to prevent discussions of the incident at the Arlington Street location from being admitted at trial." Doc. No. 33, State's Appendix ("State App."), p. 4. Counsel argued, "[M]y client would be prejudiced in the sense that he would be required to meet

3

these allegations in front of this jury at the same time while not being on trial for them and in essence being put in the position trying those facts twice. That would put him at a substantial disadvantage and the State at a substantial advantage." *Id.*, pp. 4-5. The trial judge ruled on the motion as follows:

> It's going to be an issue of who the jury believes, it appears, although I don't know what specifically the defendants will be asserting. Whether the defendants have different versions of what occurred on Arlington Street, I guess it's up to them. But this isn't a trial to determine if somebody is guilty or not guilty of that particular count because that will be tried at a later time. The only issue is whether the evidence will be admissible. I will rule now that that will be admissible, and the State can inquire into it as far as those witnesses seeing a gun and what was found as far as shell casings. I'm not going to allow the State to go into – allow the State to show that there were shots fired, at least one or two. I don't know what the evidence will show. I think it is more prejudicial to show that a dog was shot, but I'm not sure what exactly the State intends to elicit from these witnesses. I suppose you want to elicit everything, but I'm not going to allow everything. I'm not going to allow the shooting through a door into evidence in this case, but I will allow you to show that there was a gun, and the individuals had the gun and that there were some kind of flirtation with the individuals involving the gun and that shots were fired. . . . When we get to the time of trial and – Prior to trial I guess I want counsel to indicate, after you've had a chance to think about it, what the State intends to be asking the witnesses and what is going to be stated in opening statement, and the Court can rule in more fine detail at that time. I will also advise the jury at that time that the evidence is not to show that the individuals were of bad character or – I'm not sure what the evidence will show, but rather it is to prove a specific matter.

*Id.*, pp. 10-11.

During trial, Officer Gehrke testified as follows about the scene of the Arlington Street incident:

> Q (PROSECUTOR): And did you observe anything with regard to that door?
>
> A (GERKE): Yes, I did.
>
> Q: What did you observe?
>
> A: There was a hole in it.
>
> Q. All right. I'm showing you what's marked as State's Exhibit No. 32. Does this photograph fairly and accurately depict how that hole would have looked to you when you seen it on March 21st?
>
> A. Yes, it does.
>
> PROSECUTOR: At this time we will offer State's Exhibit 32.
>
> * * *
>
> REDD'S ATTORNEY: Object on the grounds it's not 470 relevant and it's [sic] prejudicial value exceeds any probative values, and on the grounds of 404(b).
>
> COURT: It's marked as 32?
>
> PROSECUTOR: Yes.
>
> COURT: Well, I will receive it; but we're going to have to remark it. There is another exhibit previously marked as 32. Let's make it 32A.
>
> PROSECUTOR: All right.
>
> COURT: I will take the objections to 32A. The objections are overruled, and 32A is received into evidence.

Direct Appeal Appendix ("DA App."), pp. 65-66.

  Carmel Dolan and Bill Pierce also were called by the State at the Lincoln Street trial to testify about the Arlington Street incident. DA App., pp. 67-84. Dolan testified that earlier on the day of the two incidents, her neighbor, Bill Pierce, had visited with her in her Arlington Street apartment. *Id.*, pp. 71-72. When she and Redd arrived at her

5

apartment later that evening, Redd learned Pierce had been in the apartment earlier that day, and he became upset. He called someone on the telephone and asked the person to bring a gun so he could kill Pierce. A short time later, a man arrived with a shotgun. *Id.*, pp. 73-78.

Redd's attorney objected to this testimony, but the trial judge overruled the objection, and instructed the jury as follows:

> Ladies and gentlemen, you're going to hear some evidence along this line from this witness and the next witness as well as you heard it from the officer. And the reason for admitting this evidence is to show specific items; and the Court has allowed it to show motive, identity, state of mind, a common course of conduct. You will be instructed on that at a later time.
>
> It is not to show that a person is a bad character or a bad person but rather for those specific traits that I've referred to you. So when you hear this testimony, that is the reason it's being received and being permitted to be presented to you. Please keep that in mind during the next two witnesses, and for the police officer, who will testify to it.

*Id.*, pp. 77-78. Dolan then testified Redd and the other man went upstairs to Pierce's apartment, and she heard them yelling that they were going to kill Pierce. She heard a gunshot, and a short time later, she heard a second gunshot. *Id.*, pp. 80-81. Pierce testified that he was in his bedroom when he heard someone yelling at him, and he then heard two gunshots. *Id.*, pp. 83-84.

In *Redd I*, the Iowa Court of Appeals addressed Redd's direct appeal claims as follows:

> A. Admission of Arlington Street Evidence.
>
> Iowa Rule of Evidence 404(b) provides evidence of "other crimes, wrongs or acts" is inadmissible to prove the defendant acted in conformity with the character the acts may show, but it is admissible for other purposes, such as to prove motive, identity, or intent. *See* Iowa R. Evid. 404(b). The exceptions

6

to rule 404(b) are based upon the relevancy of certain evidence to the proof of some fact or element in issue other than the defendant's criminal disposition. *State v. Aricivia*, 495 N.W.2d 364, 367 (Iowa App. 1992). Evidence of prior bad acts is admissible if: (1) the evidence is relevant to establish a legitimate issue in the case; and (2) there is clear proof the individual against whom the evidence is offered committed the prior bad act. *State v. Most*, 578 N.W.2d 250, 253 (Iowa App. 1998). Commission of prior acts need not be established beyond a reasonable doubt. *State v. Spargo*, 364 N.W.2d 203, 210 (Iowa 1985). Relevant prior bad acts evidence may nevertheless be excluded if its probative value is outweighed by its potential for unfair prejudice. *See* Iowa R. Evid. 403.

The State argues the Arlington Street incident was relevant and necessary to establish the use of a gun in the Lincoln Street incident and to establish the identity of the perpetrators of the Lincoln Street incident. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Iowa R. Evid. 401. We conclude the Arlington Street evidence was relevant to show it was more likely the Lincoln Street incident was committed with a shotgun by Redd. The evidence is also relevant to the issues of identity, intent, and motive. This is particularly true because the Arlington Street incident occurred close in time and location to the Lincoln Street incident. Redd was clearly identified as one of the two perpetrators in both incidents. The two incidents occurred approximately three hours apart on the same evening. The Arlington Street location is three blocks away from the Lincoln Street location. In addition, the Arlington Street incident closely paralleled the circumstances surrounding the Lincoln Street incident. In each situation, Redd was in a bar with one or more female companions and then left the bar to accompany the women to their apartments. At both locations, Redd and another man acted in a violent manner toward the male companions of the women using a sawed-off shotgun. The Arlington Street evidence was relevant to issues at Redd's trial on the charges arising from the Lincoln Street incident and served a purpose other than to show Redd's general criminal disposition.

Even if prior bad acts evidence is relevant, we must consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Alderman*, 578 N.W.2d 255, 258 (Iowa App. 1998). In making this determination, we consider the following factors: (1) the actual need for the evidence in view of the issues and the other available evidence; (2) the strength of the evidence showing the prior bad acts were committed by the accused; (3) the strength or weakness of the prior bad acts evidence in supporting the issue sought to be proven; and (4) the degree to which the jury will probably be roused by the evidence improperly. *State v. Zeliadt*, 541 N.W.2d 558, 562 (Iowa App. 1995). As noted above, witnesses from both incidents clearly identified Redd as one of the actors in both incidents. The evidence a sawed-off shotgun was accessible to Redd during the Arlington Street incident tends to prove Redd was in possession of a shotgun during the Lincoln Street incident, an issue the State was required to prove at trial. Although the Arlington Street incident was violent in nature, it was unlikely to be highly inflammatory in light of the nature of the charges on trial. When the prior bad act did not involve conduct more sensational or disturbing than the crimes being prosecuted, exclusion under Iowa Rule of Evidence 403 is not warranted. *See State v. Larsen*, 512 N.W.2d 803, 808 (Iowa App. 1993). In addition, the district court gave both an oral and a written limiting instruction to the jury on the proper use of the Arlington Street evidence. A limiting instruction can help to eliminate the danger of unfair prejudice. *See State v. Delaney*, 526 N.W.2d 170, 176 (Iowa App. 1994). Therefore, we determine the district court did not abuse its discretion by admitting prior bad acts evidence at Redd's trial.

B. Ruling on Motion in Limine.

Redd joined his codefendant's motion in limine requesting the court to exclude all evidence of the Arlington Street incident at the trial concerning the Lincoln Street incident. The district court excluded some of the evidence, including an assault by Redd on Dolan and evidence a dog was shot at the Arlington Street residence. However, the district court did allow the State to present evidence tending to show Redd was in

possession of a shotgun and fired it. The court placed the following limitation on the State's use of the evidence:

> I am not going to allow the shooting through a door into evidence in this case, but I will allow you to show that there was a gun and the individuals had the gun and that there was some kind of flirtation with the individuals involving the gun and that shots were fired.

The court also ruled the State could not refer to the fact Redd had been charged with terrorism as a result of the Arlington Street incident.

The State offered the testimony of three witnesses regarding the Arlington Street incident. Officer Richard Gehrke responded to Dolan's 911 call and investigated the scene on Arlington Street. He primarily testified as to his observation of shotgun shells at the scene and bullet holes in an apartment door. Pierce testified at trial he was in his apartment when he heard shots fired through his door. Finally, Dolan testified she knew Redd called an acquaintance to ask him to bring over a gun, she observed the two men with the gun, she heard shots fired outside of her apartment, and she saw bullet holes in Pierce's apartment door.

Redd claims on appeal Officer Gehrke's testimony he observed a bullet hole in Pierce's door at the Arlington Street apartments was in direct conflict with the district court's earlier ruling in limine that evidence of shooting through a door would be inadmissible. He asserts the district court erred by not enforcing its earlier ruling. We conclude it is unlikely excluding the testimony of Officer Gehrke that Redd now objects to would affect the outcome of his trial. The record before us shows testimony from other witnesses introduced the same evidence the defendant complains of in Officer Gehrke's testimony. *See State v. Keesey*, 519 N.W.2d 836, 838 (Iowa App. 1994) (finding no prejudice in the admission of evidence when the same evidence was admitted through the unchallenged testimony of another witness). We find no merit in Redd's contentions regarding this issue.

9

C. Ineffective Assistance of Counsel.

In order to prevail upon a claim of ineffective assistance, a defendant must prove by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984); *State v. Bugely*, 562 N.W.2d 173, 178 (Iowa 1997). An ineffective assistance of counsel claim will fail if the defendant fails to prove either prong. *State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997).

Redd claims trial counsel was ineffective for failing to object to Officer Gehrke's testimony regarding the bullet holes in Pierce's door on the grounds the evidence was inadmissible based on the district court's ruling on the motion in limine. Trial counsel did object to the testimony on relevancy and prejudice grounds. Even if counsel failed in an essential duty by not objecting to the evidence on the grounds now asserted by Redd, there is no prejudice from admission of evidence where substantially the same evidence is elsewhere in the record without objection. *See State v. Wells*, 437 N.W.2d 575, 578 (Iowa 1989). Redd's claim of ineffective assistance of counsel cannot succeed because he cannot show the requisite prejudice.

*Redd I*, 2008 WL 2520850 at \*\* 3-5.

In Redd's PCR appeal, the Iowa Court of Appeals ruled as follows:

To prevail on an ineffective assistance of counsel claim, the applicant has the burden of proving by a preponderance of the evidence that "(1) counsel failed to perform an essential duty, and (2) prejudice resulted." *Meier v. State*, 337 N.W.2d 204, 207 (Iowa 1983). With regard to the first prong, "the [applicant] must overcome the presumption that counsel was competent and show that counsel's performance was not within the range of normal competency." *State v. Buck*, 510 N.W.2d 850, 853 (Iowa 1994). With regard to the second prong, the applicant must show "a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Wemark v. State*, 602 N.W.2d 810, 815 (Iowa 1999). "A reasonable probability is

10

> a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984). We may dispose of an ineffective assistance of counsel claim if an applicant fails to meet either of these prongs. *State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997).
>
> Even if we assume without deciding counsel breached an essential duty in the particular claimed, we are nevertheless required to affirm because Redd has failed to prove the prejudice element of his ineffective assistance of counsel claim. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069, 80 L. Ed. 2d at 698. We find the evidence against Redd was overwhelming. Witnesses testified Redd and the man from Pat's Tap had a shotgun at the Arlington Street address and Redd had the gun at the Lincoln Street address. Witnesses also testified they heard Redd state he wanted to kill Pierce and heard gunshots at the Arlington Street address. In addition, an exhibit admitted into evidence shows bullet holes in Pierce's door. Finally, witnesses testified Redd used the gun to rob and burglarize Nosko at the Lincoln Street address. We accordingly affirm.

*Redd II*, 2008 WL 2520850 at *2.

Redd seeks a remedy in this court pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution . . . of the United States." Under AEDPA, federal courts are to apply a "deferential standard of review" to the state court's determinations of law and fact if the state court adjudicated the claim on the merits. *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

11

> adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

Under subsection 2254(d)(1), there are two categories of cases that may provide a state prisoner with grounds for federal habeas relief: if the relevant state-court decision was "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," and if the relevant state-court decision "involved an *unreasonable application* of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1) (emphasis added).

A state court "violates the '*contrary to*' clause of subsection 2254(d)(1) if it 'applies a rule that contradicts the governing law set forth' by the Supreme Court or if the state court 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a [different] result.'" *Flowers v. Norris*, 585 F.3d 413, 416 (8th Cir. 2009) (emphasis added) (citing *Williams*, 529 U.S. at 406, 120 S. Ct. 1495). A state court can violate the "*unreasonable application*" clause of subsection 2254(d)(1) in two ways: (a) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (b) where "the State court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S. Ct. 1495.

For a claim to be successful under subsection 2254(d)(1), "It is not enough that the state court applied clearly established federal law erroneously or incorrectly - the application must additionally be unreasonable." *Jones v. Wilder-Tomlinson*, 577 F. Supp. 2d 1064, 1073 (N.D. Iowa 2008) (Bennett, J.) (citing *Williams,* 529 U.S. at 411, 120

S. Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("an unreasonable application is different from an incorrect one.")); *see Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007) (same). "Stated differently, a federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent." *Jones*, 577 F. Supp. 2d at 1074 (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)); *see Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (to be overturned, the state court's application of federal law must have been "objectively unreasonable") (citing *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)).

Even if a state court decision is contrary to, or involves an unreasonable application of, clearly established federal law, the court's analysis is not complete. The court then must apply a harmless-error analysis, unless the error was a structural defect in the trial that defies harmless-error analysis. *See Toua Hong Chang v. Minnesota*, 521 F.3d 828, 833 (8th Cir. 2008) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). As the court held in *Toua Hong Chang*:

> Under *Brecht*, habeas relief is proper only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 623, 113 S. Ct. 1710 (internal quotations omitted). A "substantial and injurious effect" occurs when the court finds itself in "grave doubt" about the effect of the error on the jury's verdict. *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995). "Grave doubt" exists where the issue of harmlessness is "so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." *Id.* With that said, under *Fry*[ *v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007)], we are not required to conduct a formal application of both the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and *Brecht* because the *Brecht* analysis "obviously subsumes the [AEDPA test]." *Fry*, [551 U.S. at 120,] 127 S. Ct. at 2327.

*Toua Hong Chang*, 521 F.3d at 833

Redd claims his trial counsel and his appellate counsel were ineffective in failing to properly object to the admission of evidence relating to the Arlington Street incident at the Lincoln Street trial. Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to establish a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was inadequate, and (2) he was prejudiced by the deficient performance. In *Redd I* and *Redd II*, the Iowa Court of Appeals applied the principles set out in *Strickland* to Redd's ineffectiveness claims. In *Redd I*, the court held, "Even if counsel failed in an essential duty by not objecting to the evidence on the grounds now asserted by Redd, there is no prejudice from admission of evidence where substantially the same evidence is elsewhere in the record without objection." *Redd I*, 2008 WL 2520850 at * 5. In *Redd II*, the court held, "Even if we assume without deciding counsel breached an essential duty in the particular claimed, we are nevertheless required to affirm because Redd has failed to prove the prejudice element of his ineffective assistance of counsel claim. . . . We find the evidence against Redd was overwhelming." *Redd II*, 2008 WL 2520850 at *2.

Redd agrees the two-part *Strickland* test controls in this case, and he acknowledges that the Iowa Court of Appeals applied *Strickland* to evaluate the performance of his trial and appellate lawyers. However, he argues the court unreasonably applied the *Strickland* test to the facts of the case. He claims the court should have found that the performance of his lawyers "fell below an objective standard of reasonableness," and asserts "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Doc. No. 31, pp. 4-6.

In both *Redd I* and *Redd II*, the Iowa Court of Appeals affirmed Redd's conviction after finding that he had not been prejudiced by any deficiencies in the performance of his lawyers. In making these determinations, the court relied only on an analysis of the prejudice prong of *Strickland*, and not on the performance prong. This was permissible. A court is not required to address the performance and prejudice prongs in any particular

order, or to address both prongs if the court determines the petitioner has failed to meet one prong. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. Indeed, the *Strickland* Court noted that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Tokar v. Bowersox*, 198 F.3d 1039, 1046 (8th Cir. 1999) (citing *Strickland*).

Redd argues the Iowa Court of Appeals did not apply *Strickland* correctly to the facts of this case. He argues, "As shown by the transcript, trial counsel completely failed to object to the testimony of the bullet hole in the door, which directly contradicted the trial court's ruling granting that portion of Redd's motion in limine. Further compounding the problem was the admission of Exhibit 32A [the photograph of the hole in Pierce's door]. While Redd's counsel objected to the admission of the exhibit, counsel completely failed to remind the trial court that it had previously ruled that this type of evidence was inadmissible." Doc. No. 31, p. 6. Redd further argues his appellate counsel was ineffective in not arguing on appeal that trial counsel was ineffective in not adequately objecting to the testimony of Dolan and Pierce. Doc. No. 31, pp. 8-9. He contends that "[u]pon close examination . . ., the Iowa Court of Appeals engaged in circular reasoning because some of the evidence cited in support of its conclusion that the evidence was 'overwhelming' is evidence that should have been objected to because it violated the court's ruling on the motion in limine!" Doc. No. 31, p. 9.

Redd's argument falls short at the outset because it is based on the wrong standard. Under the AEDPA, the question is not whether his trial counsel or his appellate counsel was ineffective, or even whether the Iowa Court of Appeals was wrong in finding they were not ineffective. The appropriate question is whether the Iowa Court of Appeals was *unreasonable* in finding that Redd's trial and appellate counsel were not ineffective. *See Jones*, 577 F. Supp. 2d at 1073 ("It is not enough that the state court applied clearly established federal law erroneously or incorrectly - the application must additionally be

15

unreasonable."). Redd had made no attempt to show that the ruling of the Iowa Court of Appeals was unreasonable.

The underlying premise in all of Redd's arguments is that it was error to admit the Arlington Street evidence at the Lincoln Street trial. On this question, the Iowa Court of Appeals ruled as follows: "We conclude the Arlington Street evidence was relevant to show it was more likely the Lincoln Street incident was committed with a shotgun by Redd. The evidence is also relevant to the issues of identity, intent, and motive." *Redd I*, 2008 WL 2520850 at * 3. The court further ruled that "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Id.*, at *4. Under this ruling, the Arlington Street evidence, including the testimony of Dolan and Pierce, was admissible at the Lincoln Street trial. Redd has not demonstrated that this ruling was unreasonable.

Redd argues the admission of the Arlington Street evidence in the Lincoln Street trial "directly contradicted the trial court's ruling granting . . . Redd's motion in limine." Doc. No. 31, p. 6. He concludes his trial counsel was ineffective for not pointing this out at trial, and his appellate counsel was ineffective for not pointing out this shortcoming in the performance of trial counsel. Redd dramatically overstates the breadth of the trial court's ruling on his motion in limine. The judge held he would not "allow the State to show that there were shots fired," but he then said, "I'm not sure what exactly the State intends to elicit from these witnesses. I suppose you want to elicit everything, but I'm not going to allow everything. I'm not going to allow the shooting through a door into evidence in this case, but I will allow you to show that there was a gun, and the individuals had the gun and that there were some kind of flirtation with the individuals involving the gun and that shots were fired." *Id.*, at 10-11. From these inconsistent statements, it is not clear at all how much of the Arlington Street evidence the judge planned to allow to be presented at the Lincoln Street trial. He went on to state, "Prior to trial I guess I want counsel to indicate, after you've had a chance to think about it, what the State intends to

16

be asking the witnesses and what is going to be stated in opening statement, *and the Court can rule in more fine detail at that time*." State App., pp. 10-11 (emphasis added). From these remarks, it appears the judge planned to make a final determination concerning what evidence from the Arlington Street incident he would allow into evidence at the Lincoln Street trial after he had a better understanding as to how the evidence fit into the case. In any event, the trial court's ruling on the motion in limine was far too ambiguous to support a separate objection, based on the ruling alone, to the admission of the Arlington Street evidence.

A motion in limine is "a written motion which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements." *Twyford v. Weber*, 220 N.W.2d 919, 922 (Iowa 1974). "The primary purpose of a motion in limine is to preclude reference to potentially prejudicial evidence prior to the trial court's definitive ruling on its admissibility. It is generally recognized that a motion in limine does not preserve error since error does not occur until the matter is presented at trial. To preserve error, a timely objection should be made when the evidence that was the subject of the motion in limine is offered at trial." *State v. Brown*, 2001 WL 23118 (Iowa Ct. App. Jan. 10, 2001) at *2 (citations omitted). "Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial." *State v. Tangie*, 616 N.W.2d 564, 568-69 (Iowa 2000).

A ruling such as the one in this case, which was meant to grant protection from prejudicial references to challenged evidence, is not a final ruling. *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979). This is especially true where, as here, the trial court's ruling on the motion was not "unequivocal." *State v. Harlow*, 325 N.W.2d 90, 91 (Iowa 1982). The trial judge's preliminary indication of how he planned to rule on Redd's oral motion in limine did not prevent the judge from ruling otherwise at trial. Redd's trial counsel was not deficient when he did not rely on that indication when asserting objections

at trial. After the judge overruled relevance, unfair prejudice, and 404(b) objections to the Arlington Street evidence, and gave the jury a cautionary instruction (DA App., pp. 65-78), it was obvious the judge was not going to exclude the evidence based on his tentative oral ruling on the motion in limine.

Redd has not established that the Iowa Court of Appeals was unreasonable in deciding it would have made no difference in the outcome of the trial if Redd's trial counsel had raised an objection to the admission of the Arlington Street evidence based on the trial court's ruling on the motion in limine. For the same reasons, Redd has not established that the Iowa Court of Appeals was unreasonable in deciding it would have made no difference in the outcome of the appeal if Redd's appellate counsel had argued that trial counsel was ineffective.

## V. *CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[*] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b) within fourteen (14) days of the

---

[*]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

service of this Report and Recommendation, that Redd's application for writ of habeas corpus be **denied**.

**IT IS SO ORDERED.**

**DATED** this 16th day of March, 2010.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT